CONFORM

1  Levi W. Heath (CA Bar No. 220854)
   Barnes & Thornburg LLP
2  2049 Century Park East, Suite 3550
   Los Angeles, California 90067
3  Telephone: (310) 284-3890
   Facsimile: (310) 284-3894
4  Email:    levi.heath@btlaw.com

5  Malcolm E. Wheeler (CA Bar No. 47248)
   Galen D. Bellamy (CA Bar No. 231792)
6  Wheeler Trigg O'Donnell LLP
   1801 California Street, Suite 3600
7  Denver, Colorado 80202
   Telephone: (303) 244-1800
8  Facsimile: (303) 244-1879
   Email:    wheeler@wtotrial.com
9             bellamy@wtotrial.com

10 Attorneys for Defendant
   WHIRLPOOL CORPORATION

11

12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15                 **WESTERN DIVISION**

16                                    CV11  03053  JHN  (CWx)

17 DIMITRI KRUT, on Behalf of          CASE NO.
   Himself, and All Others Similarly
18 Situated,                           **DEFENDANT WHIRLPOOL**
                                       **CORPORATION'S NOTICE OF**
19           Plaintiffs,               **REMOVAL**

20      vs.

21 WHIRLPOOL CORPORATION,
   Does 1-100 inclusive
22           Defendant.

23

24

25

26

27

28

---

DEFENDANT WHIRLPOOL CORPORATION'S NOTICE OF REMOVAL
CASE NO. NOT YET ASSIGNED

FILED
CLERK, U.S. DISTRICT COURT

APR 11 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                         DEPUTY

1   Defendant Whirlpool Corporation ("Whirlpool") hereby removes to this
2   Court the state court action described below:

3       1.    On March 3, 2011, Plaintiff Dimitri Krut ("Plaintiff") filed an action
4   in the Superior Court of the State of California in and for the County of Los
5   Angeles, entitled *Dimitri Krut v. Whirlpool Corporation and Does 1-100*, Case
6   No. BC456518.

7       2.    Plaintiff served Whirlpool with the Summons and a copy of the
8   Complaint on March 10, 2011. Whirlpool's Law Department received a copy of
9   the Summons and Complaint on March 15, 2011. Thus, this Notice of Removal is
10  timely filed in accordance with 28 U.S.C. section 1446(b).

11      3.    A true and correct copy of the Complaint, together with copies of all
12  other papers served in this case, are attached hereto as Exhibit A.  To the best of
13  Whirlpool's knowledge, these documents constitute all of the process, pleadings,
14  and orders as of this date. *See* 28 U.S.C. § 1446.

15      4.    According to the Complaint, Plaintiff is a resident of California.
16  (Compl. ¶ 13.) Whirlpool is a Delaware corporation with its principal place of
17  business in Benton Harbor, Michigan. (*Id.* ¶ 15.)

18      5.    A true and correct copy of this Notice of Removal will be filed with
19  the Clerk of the Los Angeles, California, Superior Court in accordance with 28
20  U.S.C. § 1446(d), along with a notice of that filing, a copy of which will be served
21  on all parties.

22      6.    Plaintiff's Complaint is removable to this Court, and this Court has
23  jurisdiction, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28
24  U.S.C. §§ 1332, 1441(a) and (b), and 1453, because this is a putative class action
25  involving more than 100 putative class members who are seeking to recover in
26  excess of $5,000,000, and the parties are minimally diverse. *See* 28 U.S.C.
27  § 1332(d).

28

DEFENDANT WHIRLPOOL CORPORATION'S NOTICE OF REMOVAL
CASE NO. NOT YET ASSIGNED

## THIS COURT HAS JURISDICTION
## OVER THIS ACTION UNDER CAFA

7.    Plaintiff's Complaint alleges that Whirlpool sold, in the State of California, Whirlpool® Duet®, Whirlpool® Cabrio®, and Maytag® Bravos® steam dryers ("Steam Dryers"). (Compl. ¶¶ 19, 33.) Plaintiff alleges that Whirlpool's sales were based upon "false and/or misleading advertising because by using the word 'steam' in the name of and advertising for the Whirlpool Steam Dryers, the uniform message conveyed to consumers is that the dryers utilize steam to provide superior performance." (*Id.* ¶ 42.) According to Plaintiff, "[t]his claim is false and/or misleading because the dryers do not use 'steam,' but instead use a mist of cold water sprayed into a warm dryer." (*Id.*)

8.    Plaintiff filed this putative class action on behalf of "[a]ll persons or entities in California who purchased a Duet Steam Dryer, Cabrio Steam Dryer and/or Bravos Steam Dryer . . . on or between the date Defendant placed each of the Whirlpool Steam Dryers into the stream of commerce through the date the Court certifies this suit as a class action, who resided in California at the time of purchase, purchased the Whirlpool Steam Dryer at a location within California, purchased the Whirlpool Steam Dryer new (i.e., not second hand) from an entity that regularly sells/sold such devices or items, and did not purchase the Whirlpool Steam Dryer for resale to others." (*Id.* ¶ 19.) According to Plaintiff, he and the putative class members "purchased the Whirlpool Steam Dryers after exposure to the same material misrepresentations and/or omissions appearing in the name, on the product packaging, on the panel of the dryers, and in the advertisements, and received a product that does not inject hot steam into the dryer drum." (*Id.* ¶ 23.)

9.    The Complaint alleges claims for violations of the California Business & Professions Code, violations of the California Consumers Legal Remedies Act, and unjust enrichment, and it seeks to recover restitution and

-3-

1  disgorgement of profits, as well as injunctive and declaratory relief and attorneys'

2  fees and costs, on behalf of Plaintiff and the putative class. (Compl. ¶¶ 55-103; *id.*

3  at 21 (Prayer for Relief).) The requested equitable relief includes not only

4  restitution and disgorgement, but also an order "prohibiting Defendant from using

5  the word 'steam' in connection with the name of its dryers and on the dryers

6  themselves, and requiring corrective packaging and advertising to cure the

7  confusion it created in the marketplace that its dryers inject a hot steam into the

8  drum and that its 'steam' is something different than that which exists in all

9  conventional dryers[.]" (*Id.* ¶ 10.)

10        10.     CAFA reflects Congress's intent to have federal courts adjudicate

11  substantial class-action suits brought against out-of-state defendants. *See* S. Rep.

12  109-14 at 43 (2005), reprinted in 2005 U.S.C.C.A.N. 3, 41; H. Rep. 108-144, at

13  36-37 (2005). To effectuate this purpose, CAFA provides that putative class

14  actions filed in state court are removable to federal court and expands federal

15  jurisdiction over such class actions by amending 28 U.S.C. section 1332 to grant

16  original jurisdiction where, as here, the putative class contains at least 100 class

17  members, the parties are minimally diverse, and the amount in controversy

18  exceeds $5,000,000 in the aggregate for the entire class, exclusive of interest and

19  costs. 28 U.S.C. § 1332(d).

20        11.     This putative class action satisfies all the jurisdictional requirements

21  under CAFA. Specifically, based on the allegations in the Complaint, (1) the

22  proposed class consists of 100 or more members; (2) the parties are minimally

23  diverse; (3) the amount in controversy exceeds the $5,000,000 jurisdictional

24  threshold; and (4) the exceptions to CAFA do not apply here. *See* 28 U.S.C.

25  § 1332(d); *see also Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-22 (9th

26  Cir. 2007).

27

28

-4-

**A.    The Putative Class Size Exceeds 100 Members**

12.    CAFA requires that the putative class consist of at least 100 persons. 28 U.S.C. § 1332(d)(5). In the Complaint, Plaintiff purports to represent all California residents who bought a new Steam Dryer. (Compl. ¶ 19.) By Plaintiff's own admission, the class is comprised of "at least several thousand purchasers of the products at issue during the Class Period." (*Id.* ¶ 20.)

13.    Based on records maintained by Whirlpool in the ordinary course of Whirlpool's business, Whirlpool has sold more than 72,000 Steam Dryers to customers in California during the period 2007 through 2010. (Decl. of Casey J. Tubman ("Tubman Decl.") ¶ 7, attached hereto as Exhibit B.)

**B.    There Is Sufficient Diversity of Citizenship**

14.    The second CAFA requirement—that the parties be minimally diverse—is readily satisfied here, because at least one putative class member is a citizen of a different state than at least one defendant. 28 U.S.C. § 1332(d)(2).

15.    According to the Complaint, Plaintiff was a resident of California at the time he filed this action. (Compl. ¶ 13.) By definition, Plaintiff's proposed class consists solely of California residents. (*Id.* ¶ 19.)

16.    Whirlpool is a Delaware corporation with its principal place of business in Benton Harbor, Michigan. (*Id.* ¶ 15; Tubman Decl. ¶ 4.) Thus, Whirlpool is a foreign corporation and was so at the time this suit was filed. *See* 28 U.S.C. § 1332(c)(1).The citizenship of Defendants Does 1-100, which is not alleged in the Complaint, must be disregarded. *See* 28 U.S.C. § 1441(a); *Howell ex rel. Goerdt v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997) (reasoning that "naming a John Doe defendant will not defeat the named defendants' right to remove a diversity case if their citizenship is diverse from that of the plaintiffs"); *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994) (same for Jane Doe). Accordingly, because there is at least minimal diversity between

1  the parties, the second CAFA requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2).

2        **C.**    **The Minimum Amount in Controversy Requirement Is Satisfied**

3       17.    To confer subject matter jurisdiction on this Court based on diversity

4  of citizenship, the amount in controversy must exceed the sum or value of

5  $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA,

6  the claims of the individuals comprising a putative class are aggregated to

7  determine if the amount in controversy exceeds the $5,000,000 jurisdictional

8  threshold. 28 U.S.C. § 1332(d)(6).

9       18.    In the Complaint, Plaintiff asserts claims for damages and

10  disgorgement on behalf of a proposed class of all California residents who bought

11  Steam Dryers during the entire period in which such dryers have been sold.

12  (*Compare* Compl. ¶ 19 (defining the class period as "between the date Defendant

13  placed each of the Whirlpool Steam Dryers into the stream of commerce through

14  the date the Court certifies this suit as a class action) *with* Tubman Decl. ¶ 4

15  (Whirlpool sold Steam Dryers during the period 2007 to the present).)

16       19.    Plaintiff alleges that he bought his "Maytag Bravos Steam Dryer on

17  October 5, 2008 at a Home Depot store located in Panorama City, California . . .

18  He paid $776.47." (Compl. ¶ 14.) He further alleges that had he "been made

19  aware that the subject product did not employ 'steam' as alleged herein, he would

20  not have purchased the product, or would have paid substantially less for it" (*id.* ¶

21  13), that the cost of repairing the machine is "$400 or more" (*id.* ¶ 15), and that

22  Plaintiff and the putative class members have "suffered injury in fact and lost

23  money or property in that they have been deprived of the benefit of their bargain

24  and spent money on a product that lacked values, characteristics, uses and benefits

25  they were led by Whirlpool to believe they had" (*id.* ¶ 54).

26       20.    Based on records maintained by Whirlpool in the ordinary course of

27  Whirlpool's business, the lowest manufacturer's minimum advertised price

28

-6-

("MAP") of a new and unused Steam Dryer was approximately $799.00 during the period 2007-2010, and the most highly-featured Steam Dryer models had an MAP of approximately $1,699.00. (Tubman Decl. ¶ 8.) The range of wholesale prices that Whirlpool charged its trade customers for the various Steam Dryer models ranged from $388.00 at the low end (*i.e.*, for the model with the least features) to $1,370.00 at the high end (*i.e.*, for the model with the most features). (*Id.*) As noted above, Whirlpool has shipped more than approximately 72,000 Steam Dryers to its trade customers in California. (*Id.* ¶ 7.) Using the lowest wholesale price of any Steam Dryer model sold in California, if Whirlpool were ordered to pay restitution equal to all monies it collected from the sale of Steam Dryers to trade customers in California, the total amount of restitution for those machines would exceed approximately $27,936,000.00. (*Id.* ¶ 8.)

21.     Further, if Whirlpool were ordered to pay to each of the more than 72,000 Steam Dryer buyers in California either restitution equivalent to the purchase price paid by each buyer or cost-of-replacement damages, the total dollar value of such claimed relief would be substantially higher than the estimated restitution sum above. (*Id.*) Given the purchase-price-reimbursement cost of approximately $799.00 or more for the Steam Dryers, if Plaintiff were to prevail on his putative class claims, then the potential class-wide damages or restitution award, even using the low end of the estimated range of non-discounted retail prices, and excluding Plaintiff's claims for other injunctive relief and attorneys' fees, would be greater than approximately $57,528,000.00. (*Id.* ¶ 8.) For purposes of determining the jurisdictional amount in controversy, however, the Court also may consider the costs of complying with Plaintiff's requested injunctive relief and attorneys' fees. *See, e.g., Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700, 701 (9th Cir. 2007); *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 998-1000 (9th Cir. 2007); *Tompkins v. Basic Research LLC*, No. CIV. S-08-244

-7-

1    LKK/DAD, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008).

2        22.    Additionally, Plaintiff requests that the Court order Whirlpool to

3    provide "corrective packaging and advertising to cure the confusion it created in

4    the marketplace[.]"  (Compl. ¶ 10.) Plaintiff's request for injunctive relief, if

5    granted, further inflates the amount in controversy because Whirlpool would have

6    to pay for an involuntary corrective notice campaign. (*Id.*) Likewise, if Plaintiff's

7    class claims were successful, Whirlpool could be forced to pay attorneys' fees,

8    thereby inflating the amount in controversy still further.

9        23.    Plaintiff himself makes no attempt to disclaim that the putative class

10   members allege damages in excess of $5,000,000. Nor could he where the

11   Complaint expressly sets forth claims for damages, injunctive relief, and

12   attorneys' fees, the total value of which, if sustained, would substantially exceed

13   $5,000,000. And, even where a plaintiff pleads an amount in controversy less than

14   $5,000,000, removal is still proper where the defendant establishes to a legal

15   certainty that the jurisdictional amount is met. *See Lowdermilk*, 479 F.3d at 1000;

16   *Guglielmino*, 506 F.3d at 700. As CAFA's legislative history states, "if a federal

17   court is uncertain about whether 'all matters in controversy' in a purported class

18   action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court

19   should err in favor of exercising jurisdiction over the case." S. Rep. No. 109-14 at

20   42, reprinted in 2005 U.S.C.C.A.N. 3, 40; *see also* H. Rep. 108-144 at 37.

21       24.    If Plaintiff were to prevail on his request for class certification and

22   recover a class-wide judgment on behalf of all California residents who bought

23   Steam Dryers, then an award of money damages, injunctive relief, and attorneys'

24   fees would easily exceed the sum of $5,000,000. Thus, CAFA's $5,000,000

25   amount-in-controversy requirement is satisfied.

26   **D.    The Exceptions to CAFA Do Not Apply**

27       25.    Plaintiff bears the burden of establishing any applicable exceptions to

28

1    CAFA jurisdiction. *See, e.g., Serrano*, 478 F.3d at 1019 (reversing the district

2    court, and joining all sister circuits to have addressed this issue, and holding that

3    the party seeking to remand the case to state court bears the burden of establishing

4    the exceptions to CAFA); *Preston v. Tenet Healthsys. Mem. Med. Ctr., Inc.*, 485

5    F.3d 804, 812-13 (5th Cir. 2007); *Hart v. FedEx Ground Package Sys., Inc.*, 457

6    F.3d 675, 680-81 (7th Cir. 2006); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159,

7    1164 (11th Cir. 2006).

8        26.    CAFA provides two mandatory exceptions and one discretionary

9    exception to the application of federal jurisdiction. *See* 28 U.S.C. § 1332(d)(3)-

10   (4); *see also Serrano*, 478 F.3d at 1019 (discussing CAFA exceptions).

11       27.    Plaintiff's Complaint makes clear that none of these exceptions

12   applies. Each of the CAFA exceptions requires, as a starting point, an in-state

13   defendant. 28 U.S.C. § 1332(d)(3)-(4) (requiring either "significant relief" to be

14   sought from an in-state defendant (local controversy exception) or requiring the

15   "primary defendant" to be an in-state defendant ("home state" and discretionary

16   exceptions to CAFA)). Here, the only properly-named defendant is Whirlpool,

17   which is a foreign corporation. Therefore, none of the CAFA exceptions apply.[1]

---

[1] The CAFA exceptions do not apply for other reasons as well. Whirlpool reserves its right to address these issues in detail if Plaintiff files a motion to remand to state court.

DEFENDANT WHIRLPOOL CORPORATION'S NOTICE OF REMOVAL
CASE NO. NOT YET ASSIGNED

### E.    Conclusion

28.    Because the CAFA jurisdiction requirements are met, and because the exceptions to the Court's exercise of jurisdiction do not apply, this case is properly removed.

For these reasons, Whirlpool respectfully requests that the Court assume jurisdiction over this action.

Dated:  April 11, 2011                    Respectfully submitted,

                                          Barnes & Thornburg LLP


                                          By: _____
                                              Levi W. Heath

                                          Attorneys for Defendant
                                          WHIRLPOOL CORPORATION

-10-

# Exhibit A

# Exhibit A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WHIRLPOOL CORPORATION and DOES
1-100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DIMITRI KRUT, on Behalf of Himself, and All Others Similarly
Situated,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 3 - 2011

John A. Clarke, Executive Officer/Clerk

BY _____ , Deputy
Mary Flores

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California

CASE NUMBER
*(Número del Caso):*  BC 456518

County of Los Angeles - Central District
111 North Hill Street, Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jordan L. Lurie  (130013), WEISS & LURIE, 10940 Wilshire Blvd., Suite 2300, Los Angeles, CA 90024

DATE:
*(Fecha)*                JOHN A. CLARKE, Clerk, by _____ Mary Flores , Deputy
                         *(Secretario)*                                    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [✓] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100  [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

A/11

1   **WEISS & LURIE**
    Jordan L. Lurie (130013)
2   Zev B. Zysman (176805)
    Joel E. Elkins (256020)
3   10940 Wilshire Blvd., 23rd Floor
    Los Angeles, CA 90024
4   Telephone:   (310) 208-2800
    Facsimile:   (310) 209-2348
5
    *Attorneys for Plaintiff and the*
6   *Proposed Class*

7

8

9                  **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10                      **FOR THE COUNTY OF LOS ANGELES**

11

12   DIMITRI KRUT, on Behalf of Himself, and All )        CASE NO.:
     Others Similarly Situated,                  )
13                                               )
                                                 )
14                      Plaintiff,               )        **CLASS ACTION**
                                                 )
15            vs.                                 )        **COMPLAINT FOR:**
                                                 )
16   WHIRLPOOL CORPORATION and DOES              )
     1-100, inclusive,                           )        **1.) Unlawful Business Practice in**
17                                               )        **Violation of California Business &**
                                                 )        **Professions Code § 17200,** *et seq.*
18                      Defendant.               )
     _____)        **2.) False & Misleading Advertising in**
19                                                        **Violation of California Business &**
                                                          **Professions Code § 17500,** *et seq.*
20
                                                          **3.) Violation of Consumer**
21                                                        **Legal Remedies Act, Civil Code § 1750,**
                                                          *et seq.*
22
                                                          **4.)  Unjust Enrichment**
23

24                                                        **JURY TRIAL DEMANDED**

25

26

27

28

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAR 3 ~ 2011

John A. Clarke, Executive Officer/Clerk
BY _____ , Deputy
          Mary Flores

BC 456518

_____
                **CLASS ACTION COMPLAINT**

1    Plaintiff Dimitri Krut brings this action against Defendant Whirlpool Corporation

2    ("Whirlpool" or "Defendant") and DOES 1-100, inclusive on behalf of himself and all others

3    similarly situated, upon information and belief, except as to his own actions, the investigation of his

4    counsel, and the facts that are a matter of public record, as follows:

5                      **INTRODUCTION**

6    1.    This is a civil action alleging unfair competition and fraudulent, unfair, deceptive and

7    false advertising under California Business & Professions Code §§17200, *et seq.* ("UCL"),

8    California Business & Professions Code §§17500, *et seq.* ("FAL"), Consumers Legal Remedies Act

9    ("CLRA"), Civil Code §§1750, *et seq.,* and unjust enrichment based on Defendant's pattern and

10    practice of fraudulently, unfairly, deceptively, and unlawfully naming, packaging, marketing, and

11    advertising its Duet Steam Dryer, Cabrio Steam Dryer and Bravos Steam Dryer (collectively

12    "Whirlpool Steam Dryers") in the United States, including California. On information and belief,

13    the issues as described below with the Whirlpool Steam Dryers may extend to other steam dryer

14    models, and Plaintiff expressly reserves the right to amend this Complaint to include these other

15    models.

16                    **NATURE OF ACTION**

17    2.    Whirlpool makes three dryer models that use the word "steam" in the name of its

18    dryer and in its advertisements. Under the Whirlpool brand, Whirlpool markets the "Duet Steam

19    Dryer" and the "Cabrio Steam Dryer," and under the Maytag brand, Whirlpool markets the "Bravos

20    Steam Dryer." These clothes dryers are marketed and sold as including "steam" features.

21    3.    At all times relevant to the matters alleged in this Complaint, Whirlpool has made,

22    and continues to make, misrepresentations and/or omissions in the naming, packaging, advertising,

23    marketing and/or sale of its Whirlpool Steam Dryers. Specifically, Whirlpool misleadingly conveys

24    the uniform message that these products employ "steam" as that term is commonly understood by

25    consumers in the laundry context, namely that real steam would be used for removal of wrinkles and

26    odors from clothing. Real steam is packed with heat energy, which upon contact with clothes has an

27    immediate impact on cleaning efficacy and removal of wrinkles and odors from clothing.

28    Whirlpool's steam dryers, on the other hand, merely sprays cold water mist by a nozzle connected to

a hose into the dryer drum. Once that mist enters the drum, it wets the clothes and then evaporates

1  as in any standard, non-steam dryer. The process employed by Whirlpool is no different than

2  spraying cold water using a spray bottle onto clothes and throwing them into the dryer for 20

3  minutes. No reasonable consumer would mistake the cold water mist spraying out of the spray

4  bottle as steam. Whirlpool's cold mist system simply cannot replicate the benefits of real steam.

5      4.    However, consumers are led to erroneously believe that the Whirlpool Steam Dryer

6  actually creates or infuses clothing with "steam," when, in fact, it only uses a mist of cold water.

7  Indeed, Whirlpool's "Duet Steam Dryers" are aggressively advertised as having the capacity to

8  create or infuse clothes with the "pure power of steam" to remove wrinkles, touch-up clothing, and

9  remove odors from clothing. Similarly, Whirlpool's "Cabrio Steam Dryers" are advertised as

10  having the capacity to "naturally steam out wrinkles and odors." Additionally, Maytag's "Bravos

11  Steam Dryers" are advertised as having the capacity to "release wrinkles and odor with the power of

12  steam." In reality, the Whirlpool Steam Dryers do not inject any "steam" at all. Instead, the dryers

13  inject a spray of cold water to dampen the clothes, and then the water simply evaporates, in the same

14  way that water evaporates from damp clothes in any conventional dryer.

15      5.    Defendant knew or should have known, its Whirlpool Steam Dryers uniformly do not

16  have the advertised capacity to create or infuse clothing with steam to remove wrinkles and odors

17  and that these products inject cold water into a warm dryer tumbler. This cold water that is injected

18  into the dryer is not steam and does not ever become steam. Because steam is not produced,

19  Whirlpool's naming, packaging and advertising that claims the benefits of steam is false and/or

20  misleading.

21      6.    Whether or not a clothes dryer utilizes "steam" to relax wrinkles, remove odors and

22  refresh clothing is a material issue to consumers interested in purchasing a dryer. The advertised

23  steam feature for the dryers is a significant factor in consumers' decisions about which product to

24  buy. Whirlpool's Steam Dryers are more expensive than conventional clothes dryers. Indeed, it is

25  difficult to induce consumers to upgrade unless the consumer believes that the dryer will really

26  employ "steam" as advertised. As a result, Defendant's action has unnecessarily harmed Plaintiff

27  and thousands of consumers who simply did not get what they paid for.

28

A/14

1    7.    Defendant has been aware for a substantial time that consumers believe that
2  Whirlpool's "steam" refers to hot steam being injected into the dryer, but has refused, and continues
3  to refuse, to disclose to consumers in its advertising and packaging that the dryer does not inject any
4  "steam" at all, and instead, it injects a spray of cold water to dampen the clothes, and then the water
5  simply evaporates, in the same way that water evaporates from damp clothes in any conventional
6  dryer.  To date, Defendant has not adequately remedied the abuses described herein.

7    8.    Significantly, each consumer has been exposed to Defendant's deceptive use of the
8  word "steam" prior to purchasing a Whirlpool Steam Dryer which prominently appears in the name
9  of the product, on the panel of the product, product packaging as well as nationally on television, in
10  print, point of purchase, and on websites, www.whirlpool.com and www.maytag.com.   As a
11  consequence of Defendant's deceptive practices, Plaintiff and members of the Class, have purchased
12  the Whirlpool Steam Dryers under the false impression that they are receiving the advertised
13  product when they are not.

14    9.    Moreover, as further alleged herein, at least one jury in an action brought by
15  Whirlpool's competitor, LG Electronics U.S.A., Inc, has already determined that "Whirlpool created
16  a likelihood of confusion or misunderstanding regarding the nature, quality, or characteristics of
17  Whirlpool's Steam Dryers."  At trial, the evidence supporting this jury finding showed conclusively
18  that Whirlpool's "steam" function actually employs cold water spray, that the dryer does not employ
19  any "steam" that is different from the evaporation that occurs in conventional dryers, and therefore,
20  that advertising the dryer as a "steam" dryer creates a likelihood of confusion among consumers.

21    10.    This action seeks, among other things: (1) equitable and injunctive relief, prohibiting
22  Defendant from using the word "steam" in connection with the name of its dryers and on the dryers
23  themselves, and requiring corrective packaging and advertising to cure the confusion it created in
24  the marketplace that its dryers inject a hot steam into the drum and that its "steam" is something
25  different than that which exists in all conventional dryers; (2) the recovery of restitution of all
26  amounts illegally retained by Defendant; and (3) disgorgement of all ill-gotten profits from
27  Defendant's wrongdoing.

28

**JURISDICTION AND VENUE**

11.  This Court has jurisdiction over this action pursuant to Code of Civil Procedure § 410.10. In the aggregate, the damages caused to the Class members exceed the jurisdictional minimum of this Court, but neither the Plaintiff nor any member of the Class individually has suffered damages of, at least, $75,000.

12.  Venue is proper in this Court since, as detailed below, a substantial number of Defendant's products involved in the action were sold in this County, Defendant received substantial compensation from sales of its products in this County by doing business here and Defendant made numerous misrepresentations and/or omissions which had effect in this County. Thus, as to the named Plaintiff and thousands of class members, certain liability of the Defendant arose in part in this County.

**PARTIES**

13.  Plaintiff Dimitri Krut is a resident of California. Plaintiff brings this action on his own behalf and as a member and representative of the Class. During the class period, Plaintiff was exposed to and saw Defendant's naming, advertising and packaging claims, purchased a Maytag Bravos Steam Dryer, Model Number MGD6600TQ in reliance on these claims, and suffered injury in fact and lost money as a result of the unfair competition described herein. Had Plaintiff been made aware that the subject product did not employ "steam" as alleged herein, he would not have purchased the product, or would have paid substantially less for it.

14.  In reliance on Defendant's representations and/or omissions regarding the steam features for the Whirlpool Steam Dryer, Plaintiff purchased a Maytag Bravos Steam Dryer on October 5, 2008 at a Home Depot store located in Panorama City, California. He paid $776.47, including sales tax for the product. In making his purchasing decision, Plaintiff relied upon, *inter alia*, Defendant's marketing and advertising which were prepared and approved by Defendant and its agents and disseminated vis-a-vis the name of the product, on the product packaging and in the advertisements for Defendant's product.

15.  Defendant Whirlpool Corporation, ("Whirlpool") is a Delaware corporation which is licensed to do, and is doing, business throughout the United States, with its principal place of

4

A/16

1  business located at 2000 North M-63, Benton Harbor, Michigan, 49022-2692.  Whirlpool transacts

2  business in Los Angeles County, California and at all relevant times designed, manufactured,

3  promoted, marketed, distributed, and/or sold the Whirlpool Steam Dryers that are the subject of this

4  complaint, throughout the United States including California.  Whirlpool has significant contacts

5  with Los Angeles, California and the activities complained of herein occurred, in whole or in part,

6  in Los Angeles.

7        16.    On or about August 22, 2005,  Defendant Whirlpool Corporation and Maytag

8  Corporation signed a definitive merger agreement.  On or about March 31, 2006, Whirlpool

9  Corporation completed its acquisition of the Maytag Corporation.

10        17.    At all times herein mentioned, each defendant was the co-conspirator, agent, servant,

11  employee, and/or joint venturer of each of the other Defendant and was acting within the course and

12  scope of said conspiracy, agency, employment, and/or joint venture and with the permission and

13  consent of each of the other Defendant.

14        18.    The true names and capacities of Defendant sued in this Complaint as Does 1-100,

15  inclusive, are currently unknown to Plaintiff, who therefore sues such Defendant by such fictitious

16  names.  Each of the Defendants designated herein as a Doe are legally responsible in some manner

17  for the unlawful acts referred to herein, and thereby proximately caused the damage to Plaintiff and

18  members of the Class, as defined below.  Plaintiff will seek leave of the Court to amend this

19  Complaint to reflect the true names and capacities of the Defendants designated herein as Does 1

20  through 100 when such identities become known.

21                                **CLASS ACTION ALLEGATIONS**

22        19.    Without prejudice to later expansion or modification, Plaintiff brings this class action

23  pursuant to Code of Civil Procedure §382 and Civil Code § 1781 on behalf of himself and a Class

24  defined as follows:

25

26            All persons or entities in California who purchased a Duet Steam
   Dryer, Cabrio Steam Dryer and/or Bravos Steam Dryer (hereinafter

27            "Whirlpool Steam Dryers") on or between the date Defendant placed
   each of the Whirlpool Steam Dryers into the stream of commerce
   through the date the Court certifies this suit as a class action, who

28            resided in California at the time of purchase, purchased the Whirlpool
   Steam Dryer at a location within California, purchased the Whirlpool

Steam Dryer new (i.e., not second hand) from an entity that regularly sells/sold such devices or items, and did not purchase the Whirlpool Steam Dryer for resale to others.

Excluded from the Class is Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers, directors, agents, servants, or employees of Defendant, and the immediate family members of such persons. Also excluded is any trial judge who may preside over this case.

20.     The members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff reasonably estimates that there are at least several thousand purchasers of the products at issue during the Class Period. The precise number of Class members and their addresses are unknown to Plaintiff, and can be ascertained through appropriate discovery directed at Defendant and its agents, which seeks records such as sales records, registration records, warranty agreements, and warranty claim records. The Class members may also be notified of the pendency of this action by published and/or mailed notice.

21.     There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

22.     There are questions of law and fact common to the members of Class that predominate over any questions affecting individual members, which include:

a.      Whether Defendant made material, uniform misrepresentations and/or omissions in connection with the naming, labeling, packaging, advertising, marketing, promotion and sale of the Whirlpool Steam Dryers to Plaintiff and the Class with respect to the "steam" features for the products;

b.      Whether Defendant engaged in deceptive or unfair acts and practices in violation of state consumer protection statutes, including California Civil Code §1750, *et seq.*, California Business & Professions Code §§ 17200 and 17500, *et seq.*;

c.      Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to restitution and/or restitutionary disgorgement;

d.      Whether Defendant has been unjustly enriched, such that disgorgement of profits is proper, for the wrongful conduct set forth herein;

1          e.     Whether Plaintiff and the Class are entitled to the injunctive relief sought

2 herein; and

3          f.     The nature and extent of other remedies to which proposed Class members

4 are entitled as a result of Defendant's wrongful conduct.

5       23.     Plaintiff's claims are typical of the claims of the members of the Class as all

6 members of the Class are similarly affected by Defendant's wrongful conduct. Plaintiff, like other

7 members of the Class, purchased the Whirlpool Steam Dryers after exposure to the same material

8 misrepresentations and/or omissions appearing in the name, on the product packaging, on the panel

9 of the dryers, and in the advertisements, and received a product that does not inject hot steam into

10 the dryer drum. Accordingly, Defendant's material misrepresentations and/or omissions has

11 affected members of the Class in similar ways. Plaintiff and each Class member have sustained

12 injuries and damages as a direct result of Defendant's wrongful conduct in violation of law as

13 alleged herein.

14       24.     Moreover, Plaintiff is well-suited to represent all Class members who purchased any

15 of the Whirlpool Steam Dryers. Significantly, each Class member has been exposed to the use of

16 the word "steam" which is prominently found in the name of the product, on the panel of the

17 product, on the product packaging and advertisements prior to purchasing a Whirlpool Steam Dryer.

18 The material misrepresentations and/or omissions apply in the same manner to each Whirlpool

19 Steam Dryer at issue.

20       25.     Plaintiff's claims are also made in a representative capacity on behalf of the

21 members of the putative Class. Plaintiff has no interests antagonistic to the interests of the other

22 members of the proposed Class.

23       26.     Plaintiff is sufficiently similarly situated in interest to all of the members of the

24 Class, is committed to the vigorous prosecution of this action and has retained competent counsel

25 experienced in the prosecution of class actions and consumer litigation. Accordingly, Plaintiff is an

26 adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27

28

A/19

27.     Plaintiff explicitly reserves the right to add additional class representatives, provided that Defendant is given an opportunity to conduct discovery on the chosen representative(s). Plaintiff will identify and propose class representatives with the filing of Plaintiff's motion for class certification.

28.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions;

b.      The Class is readily definable; and

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation.

29.     A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered and uniformity of decisions will be insured.

30.     Plaintiff anticipates little difficulty in the management of this litigation.

## FACTUAL ALLEGATIONS

31.     Defendant Whirlpool Corporation holds itself out to the public as a manufacturer of home appliances. Defendant manufactures across all major categories, including laundry appliances, cooking, refrigeration, dishwashers and countertop appliances. Defendant markets some of the world's most recognized appliance brands, including Whirlpool, Maytag, KitchenAid, Jenn-Air, Amana, Bauknecht, Brastemp and Consul. According to Defendant, Whirlpool is the world's No. 1 global appliance brand. In 2009 alone, Defendant had approximately $17 billion in sales revenue.

32.     Defendant is in the business of manufacturing, distributing, marketing, advertising and selling Whirlpool Steam Dryers throughout the United States, including California. Defendant has manufactured, produced, and/or distributed Whirlpool Steam Dryers for several leading retailers in the United States, including Home Depot, Lowes, Sears, Best Buy and other large retail chains.

A/20

33.     Defendant manufactures thousands of Whirlpool Steam Dryers each year, a substantial portion of which are sold or offered for sale in California.  Upon information and belief, Defendant has sold, either directly or indirectly, thousands of Whirlpool Steam Dryers nationwide and in the State of California.

### Defendant's Marketing And Advertising Of The Whirlpool Steam Dryers

34.     Dryers utilizing steam have benefits separate and distinct from conventional dryers. Steam dryers rely on hot steam to raise the temperature of the clothes and air in the drum.  On the other hand, conventional dryers, rely exclusively on the heater to raise the temperature of the clothes and air in the drum.  The reason steam is so critical is that real steam is packed with heat energy which upon contact with clothes has an immediate impact on cleaning efficacy and removal of wrinkles and odors from clothing.  Odors reside inside the multiple fibers that exist in clothes, rather than only on the surface of the clothes.  A mist of cold water cannot penetrate deep in the fibers of the clothing to remove odors.

35.     Defendant has spent millions of dollars aggressively advertising and marketing the Whirlpool Steam Dryers through a variety of media, including television commercials, newspapers, magazines, point of purchase, Internet, and, most importantly, on the panel of the dryers.

36.     In or about 2007, Whirlpool entered the new market for steam dryers.  Initially, Whirlpool launched its "Duet Steam Dryer."  At approximately the same time, Whirlpool began a national advertising campaign on television, in print, and on its website at www.whirlpool.com, which makes the explicitly false and/or misleading claim that its Duet Steam Dryer uses steam to remove wrinkles, touch-up clothing, and remove odors from clothing.

37.     For example, in one advertisement, Whirlpool states: "Naturally steam out wrinkles and odors with the touch of a button.  The new Duet Steam Dryer features two cycles – Enhanced Touch-Up and Quick Refresh – that infuse clothing with steam to refresh and dewrinkle."  In another advertisement entitled "*The Pure Power of Steam*," Whirlpool states "Nothing beats the power of steam to get rid of wrinkles.  The Duet Steam Dryer naturally steams out wrinkles in just minutes, while removing any lingering odors."

38.     Similarly, Defendant's website at www.whirlpool.com contains a video titled *"Duet Steam Fabric Care System"* which states that the Duet Steam Dryer: (i) "naturally steams away tough stains;" (ii) "steams out tough wrinkles and odors;" (iii) uses "the pure power of steam." The website video also asks "How does the addition of steam work to enhance cleaning performance?" The Duet Steam Dryer (i) provides the "unique benefits of steam;"and (ii) provides a setting of "20 minutes of steam and tumbling." Further, the video also states that "The Whirlpool Steam laundry pair, is a whole new way to care for your clothes from start to finish, with the power of steam. Just another laundry innovation from Whirlpool."

39.     At the time Whirlpool launched its "Cabrio Steam Dryer," Whirlpool also placed on its website at www.whirlpool.com advertisements which touted that the new dryers "naturally steam out wrinkles and odors." The website further states "two steam cycles, Quick Refresh and Enhanced Touch-Up, take clothes from lying there to ready-to-wear in as little as 15 minutes."

40.     Moreover, at the time Whirlpool launched the Maytag "Bravos Steam Dryer," Whirlpool placed on its website at www.maytag.com advertisements which touted that "this Bravos dryer features steam enhanced cycles that relax wrinkles and removes odors from dry clothing." The website also features a demo movie. During that demo, the Bravos advertisement states "Release wrinkles and odor with the power of steam." The demo further states: "Refresh a few items or rejuvenate a full load with two separate steam cycles."

41.     The claims recited above explicitly state that Whirlpool's Steam Dryers use steam technology to achieve certain results with respect to deodorization and wrinkle removal. However, these dryers do not contain a steam generator or any apparatus that creates steam. Instead, the Whirlpool Steam Dryers tumble like any traditional dryer utilizing a gas or electric heater. Then, once the dryer tumbler is warm, a mist of cold water from a Y-connector from the washing machine is injected into the dryer drum. This mist is subsequently heated by the dryer's hot air, yet never reaches boiling point or otherwise becomes steam. Indeed, mist and steam are thermodynamically different substances and have differing qualities. Moreover, steam cannot be created inside these dryers because the temperatures inside are not sufficiently hot. Instead, the cold water mist simply

10

1  evaporates during the drying process into hot, moist air that remains thermodynamically different
2  from steam.

3      42. Accordingly, Whirlpool's advertising is false and/or misleading because by using the
4  word "steam" in the name of and advertising for the Whirlpool Steam Dryers, the uniform message
5  conveyed to consumers is that the dryers utilize steam to provide superior performance. This claim
6  is false and/or misleading because the dryers do not use "steam," but instead use a mist of cold
7  water sprayed into a warm dryer. Accordingly, the name for the dryers and statements in the
8  advertisements are in and of themselves false and/or misleading.

9      43. This promotional campaign has had a direct impact on sales. Defendant has sold
10 thousands of Whirlpool Steam Dryers, helped in part by the marketing of the steam benefits. Such
11 statements indicate that Defendant recognized and intended that consumers such as Plaintiff would
12 attach importance to the steam benefits contained in print, television, internet advertisements,
13 product packaging and on the panel of the dryers themselves, where such claims were made.

14             **Defendant's Use Of The Word "Steam" In The Product Name**
15                 **And Advertising Is Deceptive**

16     44. From the outset, Whirlpool intended to bring to market a cold water spray dryer, not
17 a steam dryer. Indeed, Whirlpool's Invention Disclosure Sheet referred to it as a "water spray
18 system." Moreover, according to internal company documents, at one time, Whirlpool considered
19 using steam, but ultimately rejected the concept in favor of the water spray system, because the
20 dryer could be brought to market faster and cheaper.

21     45. Prior to introducing the "Duet Steam" dryer into the market, Whirlpool appropriately
22 named its dryer the "Duet Myst." According to internal company documents, (made public in a
23 litigation described below) Whirlpool's Consumer Scientist, Lynn Voss, responsible for testing and
24 substantiating the advertising claims for the Whirlpool dryers, wrote that "We *never, ever say we*
25 *create steam* (or at least we shouldn't be)." Laurie Lesauskis, who was responsible for reviewing
26 advertising claims, wrote: "Suggest deleting the term '*benefit of steam*' wherever it occurs as this
27 could be construed by the consumer as that the dryer actually produces steam."

28

46.     In addition, Fran Chickering, Whirlpool's legal counsel, admonished that the phrase "power of steam" had "*not* been supported." Moreover, Matt Doll, Whirlpool's category manager explained the position of Whirlpool's legal department concerning the word "steam" by explaining: "VERY IMPORTANT:  Direction from legal was that anytime we talk about this dryer and the technology behind the 'steam' dryer, we must *never suggest we are using steam in the process* (because we don't).  So we cannot say, 'steams away wrinkles.'"

47.     However, Whirlpool's marketing and/or advertising department knew that the word "steam" had strong positive associations in consumers' minds, so it decided to change the dryer's name from "Duet Myst" to "Duet Steam." According to internal product development documents, the name "Duet Steam" capitalizes on consumer perceptions of the word "steam."

48.     Whirlpool expected that its so-called "steam" dryers would propel it to the premium laundry segment of the market as it knew that "steam" was a key purchase driver for consumers.   In fact, Whirlpool commissioned a "proof point" marketing study to explore how consumers perceive "steam" and what consumers think is most important about steam.   The marketing study found that consumers perceive "steam" as "powerful, penetrating and potent." These perceptions have nothing to do with the evaporative process that occurs in Whirlpool dryers and/or conventional dryers. Consumers were right to believe that steam is powerful, penetrating and potent as it releases energy and penetrates to areas difficult to reach with a water spray.

49.     Moreover, according to internal company documents, Defendant's own extensive consumer testing demonstrates that its advertising is deceptive.  In October of 2007, Whirlpool began conducting product demonstrations of the Duet Steam Dryer at its Insperience Studio in Atlanta. The demonstrations were intended for consumers, trade customers, and sales associates who sold the dryer. After each demonstration, Whirlpool asked participants to fill out surveys containing open-ended questions.  Whirlpool then compiled "Top 5" lists based on the surveys, reflecting the most common comments received about the dryer.  Remarkably, each and every Top 5 list produced by Whirlpool revealed that consumers believed that Whirlpool's "steam" assertions were false or misleading.  One Top 5 list stated as the number one comment: "Need to have real

A/24

1  steam in the dryer." Another stated as the number one comment: "Consumers have a lot of

2  questions about steam, the #1 question: 'is it really steam?'"

3      50.    Given the consumer preference for steam, Defendant intentionally sought to use the

4  word "steam" in the name of and advertising for its new dryers. Defendant's deceptive use of the

5  word "steam" created the illusion that its steam technology has the same characteristics of other

6  products in the laundry market that actually create or infuse clothing with "steam" in a manner

7  different from the evaporative process used in any conventional dryer.

8      51.    Defendant is aware that the average consumer cannot independently determine

9  whether Whirlpool's "steam" dryers actually utilize the characteristics of steam that consumers

10 value. Consumers are not able to operate or test a dryer at the retail store either because the dryers

11 are not hooked up to running water or electrical outlets. And even if they were, consumers generally

12 do not have the time to wait for a cycle to complete while shopping. Accordingly, consumers rely

13 on the name of the product which is a very important form of advertising. Moreover, the product's

14 name is prominently placed on the panel of the dryers themselves, and is clearly visible in the

15 showroom of the retail store. The name of the product is also used in virtually all forms of

16 advertising and promotion for the product, including print, commercial, Internet, and point of

17 purchase. Use of the word "steam" in the name provides immediate notification to the consumer

18 that the dryer generates steam or that the "steam" generation is different from a conventional dryer.

19 Accordingly, the descriptive product name allows consumers to easily compare the product to other

20 products in the dryer market.

21     52.    Defendant had actual knowledge prior to introducing the product into the market,

22 that its steam advertising was deceptive. Indeed, internal company documents recited above

23 explicitly show that Whirlpool made a reasoned, deliberate business decision to advertise its dryer

24 as a "steam" dryer in order to capitalize on consumer's perceptions of the word. In addition, by

25 falsely representing that its Whirlpool Steam Dryers utilizes steam to achieve certain results,

26 Defendant was able to charge a premium for its use of this "steam" technology, and induce

27 consumers to purchase the products.

28

53. Moreover, in a similar false advertising lawsuit pending in the Northern District of Illinois, Eastern Division, *LG Electronics U.S.A., Inc. v. Whirlpool Corporation*, Case No, 08-CV-242 (the "*LG* Case"), LG a major competitor in the dryer market alleged that Whirlpool's advertising and marketing of the same steam dryers at issue herein was false and/or misleading. Among other things, LG alleged, as Plaintiff does in this action, that the dryers do not create or infuse clothes with steam to remove wrinkles, touch-up clothing, and remove odors from clothing. Based on this conduct, on October 20, 2010, a jury rendered a verdict in the *LG* Case concluding that Whirlpool violated the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"). Specifically, the jury found that "Whirlpool created a likelihood of confusion or misunderstanding regarding the nature, quality, or characteristics of Whirlpool's Steam Dryers." At trial, the evidence supporting this jury finding showed conclusively that Whirlpool's "steam" function actually employs cold water spray, that the dryer does not employ any "steam" that is different from the evaporation that occurs in conventional dryers, and therefore, that advertising the dryer as a "steam" dryer creates a likelihood of confusion among consumers.

54. As a result of the above misrepresentations and/or omissions of material fact, Plaintiff and members of the Class either have or have likely been deceived by Whirlpool's representations into purchasing a product that purportedly employs "steam" in a manner different from the evaporative process used in any conventional dryer. Plaintiff and other Class members have thus suffered injury in fact and lost money or property in that they have been deprived of the benefit of their bargain and spent money on a product that lacked values, characteristics, uses and benefits they were led by Whirlpool to believe they had.

## FIRST CAUSE OF ACTION

**(Unlawful, Unfair and Deceptive Business Practices in Violation of California Business & Professions Code §17200, *et seq.*)**

55. Plaintiff hereby incorporates the above allegations by reference as if set forth fully herein.

56. Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

A/26

57.     The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. California Business & Professions Code §17200, *et seq*. The Act also provides for injunctive relief and restitution for violations.

58.     Defendant has engaged in and continues to engage in unlawful, unfair, fraudulent, untrue, and deceptive business acts and practices by prominently using the word "steam" in the name of its dryer and in its advertisements, thereby conveying the message that the Whirlpool Steam Dryers are capable of producing steam and the many attributes and benefits of steam when in fact, these dryers inject cold water into a warm dryer tumbler. This cold water that is injected into the dryer is not steam and does not ever become steam.

59.     By engaging in the acts and practices, as set forth more fully above, Defendant has committed one or more acts of unfair competition within the meaning of California Business & Professions Code §17200, *et seq*.

60.     Defendant's wrongful business acts constituted, and constitute, a continuing course of conduct of unfair competition because Defendant is selling its products and marketing them in a manner that has deceived and/or are likely to deceive members of the consuming public, and Plaintiff suffered actual harm as a result.

61.     Defendant's business practices, and each of them, are "unfair" because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers in that consumers are led to believe that the Whirlpool Steam Dryers have qualities and benefits they do not have concerning the advertised steam features. The injury to Plaintiff and consumers greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

62.     Further, the acts and practices of Defendant are "unlawful" because they violate or violated one or more of the following: the Consumer Legal Remedies Act, California Civil Code §§1770(a)(5), (a)(7), (a)(9), California Business & Professions Code §17500, *et seq*., and the Illinois Uniform Deceptive Trade Practices Act , 815 ILCS § 510/2. Plaintiff and the Class reserves the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

63.     Defendant's business practices are "fraudulent" because they deceived and/or are likely to deceive consumers into believing that the Whirlpool Steam Dryers they purchased have the advertised "steam" function.  Moreover, nowhere in the name of the product or on the panel of the product itself does it state that the dryer uses a cold water spray, which then evaporates in the same manner as in a conventional dryer.  Defendant's omissions and failures to disclose such material facts and information clearly and conspicuously in the name of the product and on the panel for the product (as well as other forms of advertising), and in a manner consumers are likely to notice and understand, in light of the affirmative misrepresentations regarding the steam function was and is a deceptive act or practice which Plaintiff and the other members of the Class reasonably relied on to their detriment by purchasing the Whirlpool Steam Dryers.  Accordingly, Defendant should be permanently enjoined from using the word "steam" in any way that refers to the Duet Steam Dryer, Cabrio Steam Dryer and Bravos Steam Dryer.  At a minimum, Defendant should be required to prominently disclose that its dryer uses a cold water spray, which then evaporates in the same manner as in a conventional dryer.

64.     Plaintiff and members of the Class have been injured in fact and have lost money or property as a result of Defendant's unfair competition, as more fully set forth herein.  Plaintiff and members of the Class have been injured because they would not have purchased the falsely advertised Whirlpool Steam Dryers and/or paid as much for the Whirlpool Steam Dryers had they known the truth about the steam function for the Whirlpool Steam Dryers.

65.     Defendant, through its acts of unfair competition, has unfairly acquired money from Plaintiff and members of the Class.  It is impossible for the Plaintiff to determine the exact amount of money that Defendant has obtained without a detailed review of Defendant's books and records.  Plaintiff requests that this Court restore this money and enjoin Defendant from continuing to violate California Business & Professions Code §17200, *et seq.*, as discussed above.

66.     Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, fraudulent, untrue, and deceptive business acts and practices as described herein, consumers residing within the United States, including California, will continue to be exposed to and damaged by Defendant's unfair competition.

67.     Plaintiff also seeks an order requiring Defendant to (a) make full restitution of all monies wrongfully obtained and (b) disgorge all ill-gotten revenues and/or profits, together with interest thereon.

68.     Plaintiff also seek attorney's fees and costs pursuant to, *inter alia*, Civil Code §1021.5.

## SECOND CAUSE OF ACTION

### (False and Misleading Advertising in Violation of California Business & Professions Code §17500, *et seq.*)

69.     Plaintiff hereby incorporates the above allegations by reference as if set forth fully herein.

70.     Plaintiff brings this cause of action on behalf of himself and on behalf of the Class.

71.     The misrepresentations, acts and non-disclosures by Defendant of the material facts detailed above constitute false and/or misleading advertising and therefore constitute a violation of California Business & Professions Code §17500 *et seq*.

72.     Defendant, engaged, and continues to engage to the present time, in advertising and promotion to the public and offered for sale its Whirlpool Steam Dryers on a nationwide basis, including in California.

73.     Defendant has purposefully and intentionally engaged in the false and/or misleading advertising and packaging alleged herein to directly or indirectly induce consumers to purchase its Whirlpool Steam Dryers.

74.     At all times relevant, as set forth more fully above, Defendant's advertising and packaging is and was untrue, misleading and likely to deceive consumers and/or has deceived Plaintiff and consumers by prominently using the word "steam" in the name of its dryer, on the panel of the dryer itself, and in its advertisements, thereby conveying the message that the Whirlpool Steam Dryers are capable of producing steam and the many attributes and benefits of steam when in fact, these dryers inject cold water into a warm dryer tumbler. This cold water that is injected into the dryer is not steam and does not ever become steam.

17

A/29

75. In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §17500, *et seq.*

76. Plaintiff and members of the Class have been injured in fact and have lost money or property as a result of Defendant's unfair competition, as more fully set forth herein. Plaintiff and members of the Class have been injured because they would not have purchased the falsely advertised Whirlpool Steam Dryers and/or paid as much for the Whirlpool Steam Dryers had they known the truth about the steam function for the Whirlpool Steam Dryers.

77. Defendant, through its acts of unfair competition, has unfairly acquired money from Plaintiff and members of the Class. It is impossible for the Plaintiff to determine the exact amount of money that Defendant has obtained without a detailed review of Defendant's books and records.

78. Plaintiff seeks an order requiring Defendant to undertake a public information campaign to inform members of the Class of their prior acts or practices.

79. Unless Defendant is enjoined from continuing to engage in such wrongful actions and conduct, consumers will continue to be exposed to and damaged by Defendant's false and/or misleading advertising.

80. Plaintiff also seeks an order requiring Defendant to (a) make full restitution of all monies wrongfully obtained and (b) disgorge all ill-gotten revenues and/or profits, together with interest thereon.

81. Plaintiff also seek attorney's fees and costs pursuant to, *inter alia*, Civil Code §1021.5.

### THIRD CAUSE OF ACTION

#### (Violation of Consumers Legal Remedies Act, California Civil Code §1750, *et seq.*)

82. Plaintiff hereby incorporates the above allegations by reference as if set forth fully herein.

83. Plaintiff brings this cause of action on behalf of himself and on behalf of the Class seeking permanent relief pursuant to the Consumer Legal Remedies Action, Civil Code §1750, *et seq.* ("CLRA").

18

84.     The CLRA was designed and enacted to protect consumers from unfair and deceptive business practices.  To this end, the CLRA sets forth a list of unfair and deceptive acts and practices in Civil Code §1770.

85.     Defendant has engaged in unfair and deceptive practices to the detriment of Plaintiff and members of the Class.  Plaintiff and members of the Class have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant as alleged herein.

86.     The CLRA applies to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods to consumers for personal, family or household use.

87.     Plaintiff and each member of the Class are "consumers" within the meaning of the Civil Code § 1761(d).

88.     Defendant constituted a "person" within the meaning of Civil Code §1761(c).

89.     Plaintiff's purchase of the Whirlpool Steam Dryer constituted a "transaction" within the meaning of Civil Code §1761(e).

90.     The Whirlpool Steam Dryers constituted "goods" within the meaning of Civil Code §1761(a).

91.     Defendant has violated, and continues to violate, the CLRA in at least the following respects:

        (a)     in violation of Civil Code § 1770(a)(5), Defendant has represented that the Whirlpool Steam Dryers have characteristics and benefits they do not have;

        (b)     in violation of Civil Code § 1770(a)(7), Defendant has represented that the Whirlpool Steam Dryers are of a particular standard when they are not; and

        (c)     in violation of Civil Code §1770(a)(9), Defendant has advertised the Whirlpool Steam Dryers with an intent not to sell them as advertised.

92.     Defendant's conduct constitutes an intentional misrepresentation(s), deceit, and concealment of a material fact(s) known to Defendant with the intention on the part of Defendant of thereby depriving Plaintiffs and members of the Class of property or legal rights or otherwise causing injury.